IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 3, 2017

**STATE OF TENNESSEE v. KEVIN TURNER**

**Appeal from the Criminal Court for Shelby County**
**No. 15-01136          Carolyn W. Blackett, Judge**

_____

**No. W2016-02599-CCA-R3-CD**

_____

The Defendant, Kevin Turner, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and was sentenced to eight years in the Tennessee Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Shannon M. Davis (on appeal and at trial) and Patience Branham (at trial), Memphis, Tennessee, for the appellant, Kevin Turner.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was indicted for the aggravated robbery of the victim, John Mayfield, which occurred during the early morning hours of September 29, 2014.

At trial, the victim testified that in September 2014, he worked at a Target store as a stocker and lived in the Ridgecrest Apartments in Memphis. The victim described that the apartments were "[k]ind of [in] a bad neighborhood," and he was often concerned about his safety and that of his family. "Because the area that [he] lived in was not safe,"

the victim sometimes carried a gun. The victim knew of the Defendant from the apartment complex by the nickname "King."

On September 29, 2014, the victim was leaving to go to work around 3:45 or 4:00 a.m. when he saw the Defendant and another man whom he did not know sitting on the steps outside his apartment. The previous day, the victim and the Defendant had spoken, and their conversation revolved around the victim's gun and the fact that the victim had a permit allowing him to carry it with him. The morning of the incident, the victim and the Defendant engaged in a casual conversation during which the "other guy came up behind [him] and put [a] gun to [his] back." Although the victim did not see the gun at this time, based on his familiarity with guns, he was sure it was a gun pressed to his back, and he feared for his life. The men told the victim to give them his gun, and the Defendant also took $30 cash from him.

The Defendant and the other man walked to a black SUV in the parking lot and drove off. The victim could see the second man's gun as the men were walking to the car. The victim returned to his apartment and left the magazine with bullets that had been in his back pocket. Because he did not want to lose his job, the victim went to work but called the police once he arrived.

The victim testified that the police came to Target to speak with him, and a detective later asked him to review photographs in an effort to identify his assailants. The victim identified the Defendant's photograph as one of the men who robbed him. However, he elaborated that the Defendant had tattoos on his face at the time of the robbery but did not in the photograph. The victim said that he moved away from the Ridgecrest Apartments about two months after the incident.

On cross-examination, the victim recalled that, sometime later, he saw the Defendant in a vehicle at Target and instead of immediately calling the police, he gave the detective the license plate number at another point in time. The victim explained that he was not incredibly frightened upon seeing the Defendant because the victim was in his car and the Defendant did not see him.

Officer Franklin Downs with the Memphis Police Department testified that he was dispatched to the Target store in the early morning hours of September 29, 2014, to talk to the victim. The victim appeared to be "upset" and told Officer Downs that he had been robbed at the Ridgecrest Apartments as he was leaving for work. The victim identified the Defendant by the nickname "King" as one of the men who robbed him. The victim told Officer Downs that another man, whom he did not know, held a gun to his back. The victim said that the Defendant and his cohort left the scene in a black Toyota

4Runner. Officer Downs agreed that there was no physical evidence of a robbery other than what the victim told him.

Officer Robert Trantham with the Memphis Police Department was the lead investigator in the case. Officer Trantham interviewed the victim and took a statement from him. Based on information from the victim, Officer Trantham collected a series of photographs from which the victim identified the Defendant as one of the men who robbed him. Although the photograph of the Defendant showed no tattoos, the victim told Officer Trantham that the Defendant had tattoos on his cheeks at the time of the robbery.

On cross-examination, Officer Trantham recalled that he was in contact with the victim on the day of the incident, but they did not speak again until three weeks later. His conversation with the victim that day led him to believe that the Defendant was driving the same vehicle on the day of the incident and the day the victim reported seeing the Defendant three weeks later. Officer Trantham acknowledged that he did not investigate the scene or know if anyone else did. He said that the police did not recover the stolen gun or money.

Bryuna Fleming, the Defendant's girlfriend, testified on behalf of the Defendant. Ms. Fleming stated that a woman, who identified herself as the victim's girlfriend, approached her the day before trial outside the courtroom. According to Ms. Fleming, the woman took her to meet the victim, and he told her that he would get the charges against the Defendant dropped if the Defendant paid him $400 for the gun. Ms. Fleming said that she had never seen the woman before.

After the conclusion of the proof, the jury convicted the Defendant as charged of aggravated robbery.

## ANALYSIS

On appeal, the Defendant argues that the evidence is insufficient to sustain his conviction because it was based solely on the testimony of the victim, which he asserts was inconsistent and incredible.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury

shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

For the purposes of this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402.

In the light most favorable to the State, the evidence shows that the day before the robbery, the victim and the Defendant, whom the victim knew as "King," had a conversation about the victim's gun. Early the next morning when the victim was leaving for work, he saw the Defendant and an unidentified man sitting on some steps outside his apartment. While the victim talked to the Defendant, the unidentified man came up behind the victim and placed what the victim could tell was a gun to the victim's back. The men demanded that the victim turn over his gun and cash. The victim reported the crime to the police, described the man he knew as "King," and identified the Defendant as one of the robbers in a photographic array a few weeks later. The Defendant contends that the victim's testimony alone is not enough to support his

- 4 -

conviction. However, "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Koffman, 207 S.W.3d 309, 322 (Tenn. Crim. App. 2006) (citing State v. Radley, 29 S.W.3d 532, 536 (Tenn. Crim. App. 1999)). Thus, the victim's testimony alone is sufficient to sustain the Defendant's conviction; additional physical or corroborating evidence is not required.

The Defendant also asserts that the victim's testimony lacked credibility because the victim could not identify the second robber, he acted in an "unusual" manner after the incident, and he "ignored" the police for three weeks. With regard to the victim's inability to identify the second robber, the victim testified that he had never seen the man before and that the man held a gun to his back. It is not surprising that the victim could identify the man he knew, in contrast to an unknown assailant standing behind him. As for the victim's actions after the robbery, the victim testified that he took his magazine of bullets back to his apartment and then went to work because he was afraid of losing his job. However, he called the police when he arrived, and Officer Downs came and took his statement. It appears that there was a lapse in time between the date of the incident and when the victim and the investigating officer, Officer Trantham, spoke again, but there is an indication that the delay was due to the victim's not having service for his phone. With regard to the victim's not being afraid when he saw the Defendant at a later point in time, the victim explained it was because the viewing took place in a parking lot and the Defendant did not see him. Regardless of the Defendant's assertions that the victim's testimony lacks credibility, we reiterate that credibility determinations are the province of the jury, which determined the victim's testimony to be credible. We will not second-guess this determination.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE